IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff-Appellee,<br><br>    v.<br><br>LYNDA NOLDER,<br><br>    Defendant-Appellant. | D.C. Number: CR F 05-0094 AWI<br><br>[Viol. No. F2748437]<br><br>ORDER ON APPELLANT'S APPEAL OF MOTION TO DISMISS AND MOTION FOR ACQUITTAL |

    This is an appeal from a conviction of Lynda Nolder ("Nolder") for interfering with a Forest Ranger ("Ranger McKinley" or "McKinely") in violation of 36 C.F.R. § 261.3(a) that occurred in Sequoia National Park.  On March 4, 2005, Magistrate Judge O'Neill imposed a $30.00 fine and no custodial sentence after a bench trial.  Nolder has appealed the Magistrate's denial of Nolder's pretrial motion to dismiss and the Magistrate's denial of Nolder's motion for judgment of acquittal.  Specifically, Nolder frames the two questions presented in this appeal as: "(1) Did the magistrate court err in denying Ms. Nolder's pretrial motion to dismiss on the ground that the citation failed to charge an offense?; and (2) Did the magistrate court err in denying Ms. Nolder's motion for judgment of acquittal and finding her guilty of the sole crime charged when the arresting officer was not acting within the scope of her official duties when she arrested Ms. Nolder without a warrant or probable cause?"  This Court will answer these questions in the negative and affirm the Magistrate Court's rulings.

**SCOPE OF REVIEW**

An appeal from a criminal conviction imposed by a Magistrate Judge lies with a "judge of the district court and must first be brought in the district court before prosecution in the court of appeals." United States v. Soolook, 987 F.2d 574, 575 (9th Cir. 1993); see also 18 U.S.C. § 3402. The district court's review of the magistrate's judgment is governed by the same standards as an appeal from a judgment of a district court to the court of appeals. Fed. R. Crim. P. 58(g)(2)(D);United States v. McFarland, 369 F.Supp.2d 54, 56-57 (D. Me. 2005); United States v. Fautanu, 751 F.Supp. 1420, 1421 (D. Haw. 1990); United States v. Ramirez, 555 F.Supp. 736, 738-739 (E.D. Cal. 1983). In other words, the district court "is to apply the same scope of review as a United States Circuit Court of Appeals would apply in considering an appeal of a judgment from a United States District Court." United States v. Charrington, 285 F. Supp. 2d 1063, 1066 (S.D. Ohio 2003).

I.   **SUFFICIENCY OF THE CITATION**

Prior to the bench trial, Nolder moved to dismiss the charge against her in part on the grounds that the charging instrument failed to establish a violation of law.[1] The magistrate judge found that although the citation was "bare bones," it was nevertheless sufficient.

*Appellant's Argument*

Nolder argues that the facts alleged in the statement of probable cause fail to establish that, at the time the arresting ranger ordered Nolder to exit her tent and placed her in handcuffs, that the ranger was acting within the scope of any statutorily protected duty. The facts listed in the citation show that the ranger lacked sufficient probable cause to suspect Nolder of any wrongdoing at the time she ordered Nolder out of her tent. Moreover, Nolder's alleged actions in

---

[1] Nolder also moved to dismiss the charges on the ground that the arrest was made without probable cause and that the charging instrument did not allege an offense. At the hearing on the motion to dismiss, the magistrate denied the motion on the ground of failure to charge an offense, but decided to determine the probable cause issue concurrently at the time of trial. Transcript of Motion to Suppress Hearing at 10.

response to her arrest did not constitute interference. "Interference" is an act of "obstruction or hindrance." Black's Law Dictionary, 818 (7th ed. 1999). In the context of 36 C.F.R. § 261.3, the Ninth Circuit defines "interfere" to mean "to oppose, intervene, hinder, or prevent." There is nothing in the probable cause statement of the citation that shows Nolder did anything to hinder the ranger's duties, much less that she did so intentionally.

*Appellee's Response*

The government responds that the basis of Nolder's motion to dismiss before the magistrate did not include the argument that Ranger McKinley lacked probable cause to suspect Nolder of wrongdoing at the time she ordered Nolder out of her tent.

The government also responds, inter alia, that the citation clearly supports a finding that Nolder was arrested and cited for her failure to comply with a lawful order, which constitutes interference. The citation and accompanying probable cause statement confirm that Ranger McKinley was engaged in the performance of her official duties in that she was responding to a call of a potential criminal threat. This is part of Ranger McKinley's duties as a law enforcement officer of the Forest Service. See 36 C.F.R. § 361.3(a). The citation and probable cause statement apprise Nolder of the charges against and provides Nolder with notice as to how to defend against the charge.

*Charging Instrument: Citation No. F2748437 & Accompanying Statement of Probable Cause*

Nolder was charged through citation by Forest Service Ranger Diana McKinley with interfering with a forest officer in violation of 36 C.F.R. § 261.3. The statement of probable cause accompanying the citation in relevant part reads:

> I responded to Site #6 of Princess Campground regarding a camper who threatened the camp host. . . . After announcing myself[,] a woman unzipped the tent and asked what's [sic] wanted. I told her I wanted to talk to her regarding the incident with the camp host. Later identified as Lynda Nolder, she became verbally belligerent and refused to comply with my lawful request to "step over here (away from the tent) so I can talk to you." When I told her to turn around and put her hands behind her back she refused. She pulled away as I attempted to grab her wrist. She continued to resist after I placed her in a control hold.

Excerpts of Record ("ER") 1.  Written under the "Offense Charged" section of the citation is "36 C.F.R. 261.3(A)."  Id.  Furthermore, written under the "Offense Description" section of the citation is, "Resisting or interfering with any forest officer engaged in the performance of her duties."  Id.  The date, time, and location of the offense are listed as "8/16/04 [at] 1:30 p.m. [at the] Princess Camprground #6."  Id.

**Legal Standard**

The sufficiency of a charging instrument is reviewed *de novo*.  See United States v. Omer, 395 F.3d 1087, 1088 (9th Cir. 2005).  Under Federal Rule of Criminal Procedure 58, trial of a misdemeanor may proceed on an indictment, information, or complaint, and trial of a "petty offense" may proceed "on a citation or violation notice."  Fed. R. Crim. Pro. 58(b)(1); United States v. Dubiel, 367 F.Supp.2d 822, 823 (D. Md. 2005).  "For petty offenses committed on federal enclaves, a violation notice is the functional equivalent of an indictment or an information."  United States v. Moore, 586 F.2d 1029, 1031 (4th Cir. 1978); United States v. Johnson, 131 F.Supp.2d 721, 723 (D. Md. 2001).  "[A]n indictment is deemed constitutionally sufficient if it contains the essential elements of the offense intended to be charged, sufficiently apprises the accused of what she must be prepared to defend against, and enables the accused to plead an acquittal or conviction . . . as a bar to . . . subsequent prosecution."  United States v. Russell, 369 U.S. 749, 763 (1962); United States v. Lopez-Alvarez, 970 F.2d 583, 596 (9th Cir. 1992); cf. Dubiel, 367 F.Supp.2d at 825-27 (discussing indictments, information, and citation/violation notices and holding that "the violation notice sufficiently apprised the defendant of the charges brought against him such that he could make an informed decision in entering a plea.").  If an indictment fails to allege an essential element of the offense charged, and objection is properly made prior to trial, then the indictment is considered fatally flawed and dismissal is required.  Omer, 395 F.3d at 1088.

The purpose of 36 C.F.R. § 261.3(a) is to "regulate the use of the National Forests and to preserve them from destruction."  United States v. Wilfong, 274 F.3d 1297, 1301 (9th Cir. 2001).

36 C.F.R. § 261.3(a) prohibits "threatening, resisting, intimidating, or interfering with any forest officer engaged in or on account of the performance of his official duties in the protection, improvement, or administration of the National Forest System." A forest officer "is performing an 'official duty' when the officer is on duty and performing an act that contributes to the protection, improvement, or administration of the National Forest," and is not off "on a frolic of his own." Wilfong, 274 F.3d at 1300; United States v. Ryberg, 43 F.3d 1332, 1334 (9th Cir. 1995). Similar to how one does not have a right to resist arrest, "so long as [the officer] is performing official duties in the administration of the Forest Service, 36 C.F.R. § 261.3(a) prohibits anyone from interfering with those duties." Wilfong, 274 F.3d at 1300-01. "The terms "threatening," "resisting," "intimidating," and "interfering" are listed disjunctively "so that proof of any one of the acts alone constitutes an offense." Bucher, 375 F.3d at 933; Wilfong, 274 F.3d at 1303; Hoff, 22 F.3d at 223. The Ninth Circuit applies the "common meaning" of "interfere" for purposes of § 261.3(a). See Wilfong, 274 F.3d at 1301. Accordingly, to "interfere" means to "oppose, intervene, hinder, or prevent." Id. Physical force is not a required element of "interference" for purposes of § 261.3(a). Id. at 1302.

### Resolution

For a charging instrument to be sufficient, it should contain the essential elements of the offense intended to be charged, apprise the accused of what she must be prepared to defend against the charge, and enable the accused to plead an acquittal or conviction as a bar to subsequent prosecutions. See Russell, 369 U.S. at 763; Lopez-Alvarez, 970 F.2d at 596; see also. Dubiel, 367 F.Supp.2d at 825-27. An offense under 36 C.F.R. § 261.3(a) is committed when a defendant in some way threatens or intimidates a National Forest Service officer or resists or interferes with the officer while the officer is attempting to perform an official duty, which is a duty that contributes to the protection, improvement or administration of a National Forest. See 36 C.F.R. § 261.3(a); Wilfong, 274 F.3d at 1300-01.

Here, the citation lists 36 C.F.R. § 261.3(a) as the offense in question, lists the date, time,

and place of the offense, and gives a description of the offense that tracks the language of 36 C.F.R. § 261.3(a).  See ER at p. 1.  The statement of probable cause indicates that Ranger McKinley went to Nolder's campsite (Princess Campground site #6) in response to "a camper who threatened the camp host."  A ranger who is investigating or responding to threats made against the camp host is clearly engaged in an official duty since such conduct contributes to the proper administration of Sequoia National Park and to the peace and protection of those within the park.  See Wilfong, 274 F.3d at 1300-01.  The statement of probable cause then states that McKinley told Nolder that she wanted to talk about the incident with the camp host and asked Nolder to step away from the tent so that she could talk to Nolder.  See ER at 1.  Nolder was verbally belligerent and refused to comply.  Id.  McKinley then instructed Nolder to place her hands behind her back and Nolder again refused.  Id.

When the magistrate ruled on the motion to dismiss the citation, he noted that the citation and probable cause statement was "bare bones."  This Court agrees, but also agrees with the magistrate's ultimate conclusion.  An offense is charged because the probable cause statement shows that McKinley was engaged in the performance of an official duty when she confronted Nolder.  While trying to perform her official duty of investigating threats made against the camp host, McKinley requested Nolder to step away from the tent and Nolder refused and was verbally belligerent.  McKinley's investigation was not able to proceed because of Nolder's conduct.  Nolder was hindering the investigation and thus, was interfering with McKinley's official duties.  The information contained in the citation and statement of probable cause is sufficient in that it lists the regulation that was allegedly violated and contains the elements of the offense, provides an adequate description of how that regulation was violated, enables Nolder to present a defense, and would act as a bar to further prosecution.  See Russell, 369 U.S. at 763; Lopez-Alvarez, 970 F.2d at 596; see also Dubiel, 367 F.Supp.2d at 825-27.  The citation and probable cause statement are constitutionally sufficient.  Accordingly, the magistrate's denial of the pre-trial motion to dismiss on the ground that the citation fails to allege an offense is affirmed.

**2.    SUFFICIENCY OF THE EVIDENCE FOR CONVICTION**

Nolder moved for an acquittal and argued that the evidence did not show that McKinley was acting within the scope of her official duties and that she arrested Nolder without probable cause or a warrant. The magistrate judge denied the motion.

*Appellant's Argument*

Nolder argues that the evidence presented shows that Nolder and the campground host, Joan Price, had two verbal confrontations, the last one involved a threat that Nolder "wasn't done with [Price] yet." The last confrontation caused Price to become frightened and she contacted National Park Service rangers. The rangers asked Price if she wanted to press charges, but Price said that she did not wish to do so. The rangers, including McKinley, then drove to Nolder's campsite. Once McKinley arrived at the campsite and determined that Nolder was inside of her tent, McKinley ordered Nolder out of her tent and placed her in handcuffs almost immediately without conducting any investigation. At the point she was handcuffed and led to McKinley's squad car, Nolder was under arrest. However, there were no facts that could have created an objective belief that a crime had been committed, that is, there was insufficient evidence to show that Nolder had engaged in an illegal threat or other unlawful conduct. At the very least, an investigative detention under *Terry* had begun at the point that Ranger McKinley ordered Nolder to step aside/outside of the tent to discuss the situation with Price. However, the detention and arrest occurred practically immediately from when McKinley arrived and the probable cause requirement for an arrest required that McKinley investigate further before arresting Nolder. It is not enough that a citizen may be abrasive or distasteful and a detention cannot be based on a mere hunch. See Duran v. City of Douglas, 904 F.2d 1372, 1378 (9th Cir. 1990). "It is particularly telling that [Nolder] was never charged with the offense for which Ranger McKinley ostensibly came to her tent to arrest her [i.e. illegal threat], begging the question: how could Ms. Nolder's arrest be defended on the ground that it was justified by her interference with her arrest for a subsequent offense that she had not yet committed?" Opening Brief at 13:13-16.

*Appellee's Response*

The government responds that this Court should review Nolder's appeal only for plain error since she did not renew he motion for acquittal before she went forward with her defense.

With respect to the substance of Nolder's appeal, there is no legal support for her position. The evidence shows McKinley was on duty and was investigating a matter pursuant to her authority under law. The evidence shows that Nolder's refusal to move away from the tent delayed McKinley. The evidence shows that Nolder's non-compliance placed McKinley in an unsafe position because there was a campfire behind McKinley, an individual in front of her who was accused of making threats, a dog off leash, and Nolder's husband somewhere in the background. R.T. 24. Additionally, Nolder told McKinley, "I'm not going to do anything you tell me." R.T. 25. Additionally, Nolder's conduct prevented McKinley from eradicating a marijuana garden  R.T. 21. This evidence is sufficient to support Nolder's conviction. Additionally, probable cause existed to arrest Nolder based on McKinley's personal observations.

## Legal Standard

The standard for reviewing the sufficiency of the evidence to support a criminal conviction is whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Bucher, 375 F.3d 929, 934 (9th Cir. 2004); United States v. Hoff, 22 F.3d 222, 224 (9th Cir. 1994); United States v. Arbo, 691 F.2d 862, 865 (9th Cir. 1982). "This test applies to both jury and non-jury trials." Arbo, 691 F.2d at 866. All reasonable inferences that may be drawn from the evidence are to be drawn in the government's favor. United States v. Johnson, 804 F.2d 1078, 1083 (9th Cir. 1986). Additionally, "[i]n a bench trial, the court is the trier of fact and the judge of credibility of the witnesses and of the weight of the evidence." Dakota Indus., Inc. v. Dayton Hudson Corp., 2001 U.S. Dist. LEXIS 24029 at *4 (D. S.D. 2001) (citing Noland v. Buffalo Ins. Co., 181 F.2d 735, 738 (8th Cir. 1958)).

### **Resolution**

To begin, the Court does not find that Nolder has waived her challenge to the sufficiency of the evidence.  In a bench trial, it is unnecessary to make or renew a Rule 29 motion for acquittal because a plea of not guilty is the functional equivalent of a motion for acquittal.  See United States v. Grace, 367 F.3d 29, 34 (1st Cir. 2004); United States v. Hogan, 89 F.3d 403, 404 (7th Cir. 1996); United States v. Atkinson, 990 F.2d 501, 503 (9th Cir. 1993); United States v. Lex, 300 F.Supp.2d 951, 956 n.2 (E.D. Cal. 2003).  Review under the plain error standard is inappropriate.

With respect to the evidence presented to the magistrate, this Court believes that there is sufficient evidence to support the conviction for interfering with a Forest Service officer in performance of official duties.  At trial, the campground host, Price, testified that she was involved in a dispute with Nolder over parking fees.  See T1 at 37.[2]  Price indicated that she would have to call law enforcement if Nolder did not pay.  Id.  Price testified that Nolder made personal attacks against her.  "She [Nolder] was very focused and deliberate, hostile, kept escalating.  She threatened she was going to tell my supervisor, she was going to ruin my career, and I'm sitting here because I'm 64 years old, and I didn't really see that as a career, but there were these threats that she kept making like that."  Id.  Price went back to her kiosk and attempted to call law enforcement, since Nolder had demanded to speak to law enforcement, but no law enforcement was available.  Id. at 38.  The decision was eventually made to waive the parking fee.  Id.  However, later that day, Nolder went to Price's own camp site.  Id. at 40-41.  Nolder was about 15 feet away from Price.  Id. at 41.  At first Nolder was smiling, but when Price asked if she could help her, Nolder began "getting really irate and started yelling at [Price,] 'I'm not done with you yet.' . . . [Nolder] was very deliberate and focused, total eye contact with [Price].  The look in [Nolder's] eye was frightening."  Id.  Nolder's body language was very tense and her facial expression was "very angry and hostile."  Id. at 42.  Nolder kept saying that she

---

[2]"T1" refers to the court transcript of Day 1 of the trial.

was not "through with [Price] yet," and that she was "going to get [Price.]" Id. Price felt like Nolder was also making threats of physical harm. Id. at 43. Price was scared over Nolder's behavior. Id. at 44. Price told to a Forest Service employee, Carol Hallacy, see id. at 51, about this encounter with Nolder. Id. Hallacy had also spoken to Price about the initial confrontation regarding the parking fee. Id. at 38-39. After hearing about Nolder accosting Price at Price's own campsite and seeing Price break down in tears, Hallacy contacted law enforcement. Id. at 44, 46. In response to the Hallacy's call, two Park Service rangers and McKinley, a Forest Service ranger, arrived. Id. at 47. Price testified that when the rangers arrived, she told them that she did not want to press charges and just wanted Nolder to leave her alone. Id. at 48.

Officer McKinley gave testimony on the second day of trial. McKinely testified that she interviewed Price regarding the two confrontations that Price had with Nolder. T2 at 22-23.[3] McKinely testified that Price related that she felt threatened by Nolder and that McKinley believed that she was investigating a potential felony violation of criminal threats. Id. at 23. McKinley and two park rangers then went to Nolder's campsite. Id. McKinley then testified in pertinent part:

**A:** **When I first got there, it appeared that nobody was there. I saw a dog off a leash. I saw an unattended campfire and I saw some food storage violations.**

Q: And what did you do then?

**A:** **As I normally do in what appears to be an unattended campsite, I announce forest service, is anybody here.**

Q: And what result?

**A:** **I thought I heard some movement in the tent. So I again announced forest service, is anybody here.**

Q: Did you get a response?

**A:** **At the time, the tent unzipped a little bit. I could see a woman and she said what do you want.**

---

[3]"T2" refers to the court transcript of the second day of trial.

| | | |
|---|---|---|
| 1 | Q: | And then what did you do? |
| 2 | **A:** | **I said, ma'am, I'm with the forest service.  Would you please step out so I can talk to you.** |
| 3 | Q: | And then what happened? |
| 4 | **A:** | **She further unzipped the tent, and as she was getting out, she said what about.** |
| 5 | Q: | And what did you do? |
| 6 | **A:** | **I told her that I wanted to talk to her about the incident earlier in the day with – involving the camp host.** |
| 7 | Q: | And what happened then? |
| 8 | **A:** | **By now she was out of the tent.  She was a couple of steps from the tent.  She stopped and looked at me and she said what incident with the camp host.  There was no  incident.  She's been harassing us all day.** |
| 11 | Q: | And what was – what did you do then? |
| 12 | **A:** | **At that point in time, I realized I wasn't in a real safe position.  I had a hot campfire behind me.  I had this person in front of me who was accused of making criminal threats.  By now I could see a husband in the background.  There was a dog somewhere in the campsite.  I asked her if she would please step over and I indicated over towards our vehicles.  Would you please step over her and talk to me.** |
| 15 | Q: | At that point, did you know the individual that you saw was her husband? |
| 16 | **A:** | **I know he's her husband.** |
| 17 | Q: | At that point, did you know? |
| 18 | **A:** | **Not for sure**. |
| 19 | Q: | Okay.  When you requested her to – you said to step over, what – step over here, what happened? |
| 20 | **A:** | **She stood where she was, looked me in the eye, and emphatically said no.** |
| 21 | Q: | And then what? |
| 22 | **A:** | **Because of the way I was dressed, which was in camouflage pants –** |
| 23 | Q: | And why were you dressed like that? |
| 24 | **A:** | **Because I was tasked to – for the marijuana gardens.** |
| 25 | Q: | Okay. |
| 26 | **A** | **I was identifiable.  I had a T-Shirt on with an embroidered badge in it and there was** |

11

      **a badge on my belt in front of my sidearm.  I said ma'am, I'm a federal officer and I'm asking you to please step over here so I can talk to you.**

Q:     And what happened.

**A:     She said no.**

. . . . . . . .

Q:     And so, Officer McKinley, after that second time why you explained – what happened then?

**A:     I again said, ma'am, I'm telling you I'm a federal law enforcement officer and I'm telling you to walk over here.**

Q:     And what happened?

**A:     She said no, I'm not going to do anything you tell me.**

T2 at 23-26.

      McKinley further testified that she ordered Nolder to place her hands behind her back and that Nolder initially complied, but then resisted.  Id. at 26-27.  McKinley then placed Nolder in a control hold, placed handcuffs on Nolder, searched Nolder, and placed her in the squad car.  Id. at 27-28.  Price told another park ranger that she did not want to press charges against Nolder.  Id. at 30.  Based on Price's request, McKinley did not arrest Nolder for her conduct towards Price, but did issue a citation for interfering and resisting a forest service officer in the performance of official duty.  Id. at 30-31.

      The defense called as witnesses Nolder and Nolder's daughter, Tandra, and husband, Jack.  These witnesses basically testified that Ranger McKinley and two other officers arrived at the campsite, Ranger McKinley announced herself and ordered Nolder to come out of the tent with her hands behind her back, and when Nolder came out of the tent, Ranger McKinley tried to cuff Nolder and would not tell Nolder what or why this was happening.  On rebuttal, McKinley denied that she ordered Nolder to come out of the tent with her hands behind her back.[4]  Id. at

---

[4] Additionally, during the government's case in chief, Ranger Gould, who was one of the other rangers who accompanied McKinley to Nolder's campsite, testified that McKinley identified herself and asked if anyone was present.  T1 at 69.  Gould did not indicate that McKinley simply ordered Nolder out of her tent with her hands behind her back.  Also, Gould testified that Nolder was in an irritated and agitated state.  Id. at 71.

119.

The evidence presented by the Government and the defense were not consistent, but as the trier of fact, the magistrate was free to believe the Government and disbelieve the defense witnesses. Moreover, viewed in the light most favorable to the magistrate's judgment, the testimony of Price and Ranger McKinley is sufficient to support Nolder's conviction.

McKinley's testimony demonstrated that she was investigating threats made against Joan Price. There is no dispute that McKinley had the authority as a Forest Service officer to investigate violations of federal and state law occurring within Sequoia National Forest. Price had told McKinley about the two confrontations that she had with Nolder and the testimony indicates that Price was frightened and believed that there had been threats of a physical nature made against her. McKinley believed that she was investigating a potential felony crime under California law. Whether Nolder had actually committed the offense of criminal threats against Price under California Penal Code § 422 is immaterial.[5] Based on Price's testimony, Nolder's behavior was not normal. After the parking fee issue had been resolved, Nolder went to Price's camp site and reignited and escalated the situation. According to Price, Nolder was yelling, irate, making various threats, and causing a problem such that Price was in fear for her safety. It goes without saying that the Sequoia National Park cannot properly function when its personnel are threatened and put in fear for their well-being by campers. McKinley would have been remiss in her duties if she had not gone to speak with Nolder. Thus, when McKinley went to speak with Nolder about the second confrontation with Price at Nolder's campsite, McKinley was clearly engaged in her official duty as a Forest Service officer and not off on a frolic. See Wilfong, 274

---

[5] California Penal Code § 422 reads in relevant part:

Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison.

F.3d at 1300; Ryberg, 43 F.3d at 1334; see also Arbo, 691 F.2d at 865-66.

McKinley also testified that she did not order Nolder out of the tent with her hands behind her back. Instead, McKinley told Nolder that she wanted to speak to Nolder about the incident with Price, but Nolder denied that there was an incident and instead claimed that Price had been harassing Nolder. After Nolder said this to McKinley, McKinley testified that she believed that she was not in a safe position. McKinley testified that there was a dog off leash, there was a hot campfire behind her,[6] she was dealing with someone who had made threats against Price such that Price was afraid for her safety, Ranger Gould testified that Nolder was agitated, and Nolder's husband was in the background somewhere. Given these considerations, requesting or instructing that Nolder move away from the tent and towards McKinley's vehicle for officer safety purposes was not an unreasonable request. Cf. Ganwich v. Knapp, 319 F.3d 1115, 1120 (9th Cir. 2002) ("Some seizures are so much less intrusive than a traditional arrest that they may be reasonable, in light of the government's strong opposing interests in crime prevention and detection and in police officers' safety."). In order for McKinley to continue her investigation, McKinley felt that she needed to be in a safer position. Instead of complying, Nolder became verbally belligerent, looked McKinley in the eye, and told McKinley that she was not going to follow instructions. Because of this, McKinley's investigation could not proceed. Nolder's refusal to simply move to a safer location so that McKinley could continue her investigation of the threats made against Price by Nolder clearly impeded or hindered McKinley's investigation. Nolder's failure to comply with McKinley's reasonable request/instruction hindered McKinley's investigation. See Wilfong, 274 F.3d at 1300-01.

In short, McKinley's testimony shows that Nolder hindered McKinley in the course of McKinley's official duties when Nolder refused to move a away from the tent and to a more

---

[6] Defense witnesses testified that the fire was out and that there were only cold coals in the fire pit. McKinley testified that there was a "hot campfire" behind her. As the trier of fact, the magistrate was free to believe McKinley over the Nolder and Nolder's husband and daughter.

secure area.[7] The evidence presented by the Government is sufficient to support Nolder's conviction for violation of 36 C.F.R. § 261.3(a).

Additionally, Nolder's conduct toward McKinley occurred in the very presence of McKinley. As discussed above, McKinley was investigating the incident with Price, had so informed Nolder, Nolder refused to comply with McKinley's request to move to a safer location, and McKinley's investigation stalled. Thus, McKinley saw Nolder interfering with McKinley's duties. "A police officer has probable cause to arrest a suspect without a warrant if the available facts suggest a 'fair probability' that the suspect has committed a crime." Tatum v. City & County of San Francisco, 441 F.3d 1090, 1094 (9th Cir. 2006) (citing United States v. Valencia-Amezcua, 278 F.3d 901, 906 (9th Cir. 2002) and United States v. Fixen, 780 F.2d 1434, 1436 (9th Cir. 1986)). "An officer who observes criminal conduct may arrest the offender without a warrant, even if the pertinent offense carries only a minor penalty." Tatum, 441 F.3d at 1094 (citing Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001)). Because McKinley witnessed Nolder flatly refusing to obey a lawful command by McKinley that was made so that McKinley could continue with her investigation of the threats made against Price, McKinley had probable cause to believe that Nolder was violating/had violated 36 C.F.R. § 261.3(a) in McKinley's presence. Because Nolder committed a violation of 36 C.F.R. § 261.3(a) in McKinley's presence, McKinley did not need a warrant to arrest Nolder. See Atwater, 532 U.S. at 354; Tatum 441 F.3d at 1094.

The magistrate's refusal to grant an acquittal is affirmed.

## CONCLUSION

Nolder appeals her conviction under 26 C.F.R. § 261.3(a) on the basis of an inadequate

---

[7] Additionally, McKinley had probable cause to arrest Nolder for violating 36 C.F.R. § 261.3(a). McKinley was investigating the incident with Price, had so informed Nolder, and Nolder refused to comply with McKinley's request to move to a safer location. The conduct supporting Nolder's conviction for violating 36 C.F.R. § 261.3(a) all occurred in front of McKinley.

notice of violation citation and insufficiency of the evidence to support her conviction. However, the information contained in the citation and statement of probable cause is sufficient in that it lists the regulation that was allegedly violated and contains the elements of the offense, provides an adequate description of how that regulation was violated, enables Nolder to present a defense, and would act as a bar to further prosecution. The citation violation is constitutionally adequate.

With respect to the sufficiency of the evidence, the testimony of Ranger McKinley and Price, viewed in the light most favorable to the verdict, shows that McKinley was investigating threats made by Nolder against Price. Such an investigation is part of the official duties of McKinley. Further, McKinley's testimony shows that Nolder did not follow a lawful command, made for the purposes of officer safety, to move away from the tent and towards McKinley's squad car. Nolder expressly refused to cooperate, which impeded or hindered McKinley in her investigation. This is sufficient to show that Nolder interfered with McKinley's official duties as a Forest Service officer.

Also, Nolder's interfering conduct occurred in front of McKinley. McKinley's testimony indicates that McKinley had probable cause to believe that Nolder committed a violation of 36 C.F.R. § 261.3(a) when Nolder refused to move away from the tent. Since McKinley had probable cause to believe that a violation of 36 C.F.R. § 261.3(a) had occurred in her presence, McKinley did not need a warrant to make the arrest/issue the citation violation.

Accordingly, Nolder's grounds for review are DENIED and the magistrate court is AFFIRMED.

IT IS SO ORDERED.

**Dated:   June 16, 2006**              /s/ Anthony W. Ishii
0m8i78                                          UNITED STATES DISTRICT JUDGE